# 2007 DTA 102

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL VI**

SOTERO DE LOS SANTOS HERNÁNDEZ
Recurrente

v.

ADMINISTRACIÓN DE CORRECCIÓN
Recurrido

Núm. KLRA-2007-00183

San Juan, Puerto Rico, a 15 de agosto de 2007

Panel integrado por su Presidenta, la Juez Coll Martí,
y los Jueces Vizcarrondo Irizarry y Cortés Trigo

Cortés Trigo, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

El señor Sotero de los Santos Hernández (recurrente) comparece ante nos solicitando la revocación de las

Resoluciones de 24 de octubre de 2006 y de 15 de febrero de 2007 del Comité de Clasificación y Tratamiento de la Institución Correccional de San Juan de la Administración de Corrección (Comité). Mediante estas Resoluciones, el Comité determinó ratificar la custodia máxima del recurrente. Considerado su escrito, la comparecencia del Procurador General y sus anejos, resolvemos confirmar.

## I

El recurrente se encuentra confinado cumpliendo una sentencia de 10 años de prisión por infracción al Artículo 401 de la Ley de Sustancias Controladas dictada el 2 de septiembre de 2005. El 20 de agosto de 2005 cumplió sentencia de 6 meses por el delito de resistencia u obstrucción pública. Inicialmente fue clasificado en custodia mediana. Luego fue reclasificado a custodia máxima porque cumplía delito de severidad extrema. Se encuentra clasificado en custodia máxima desde el 19 de octubre de 2005.

El 24 de octubre de 2006, el Comité se reunió para evaluar el caso del recurrente. En cuanto a su custodia acordó ratificar la custodia máxima *"[p]ara observar por más tiempo ajustes en custodia, debe beneficiarse al máximo de tratamiento contra la Adicción por poco tiempo cumplido en relación a la sentencia"*.

El recurrente apeló y se le declaró ha lugar su apelación mediante resolución de 13 de diciembre de 2006, la cual fue notificada al recurrente el 8 de febrero de 2007. A estos fines, el Comité consideró que el recurrente podía beneficiarse del tratamiento contra la adicción y del área escolar en una custodia menor.

No obstante, antes de que se le notificara al recurrente la resolución del 13 de diciembre de 2006, éste fue objeto de una querella disciplinaria, fechada 23 de enero de 2007, Tipo Nivel I de severidad, por violación a los Códigos 107 y 113 del Reglamento para los Procedimientos Disciplinarios de Programas de Desvío y Comunitarios, Reglamento Núm. 6994 de 11 de enero de 2005 (Reglamento Núm. 6994). El Código 107 corresponde a la posesión, fabricación o introducción de armas de fuego, armas blancas, instrumentos de cualquier índole, materiales explosivos, sustancias químicas y/o todo tipo de municiones o su tentativa y el Código 113 corresponde a la agresión física seria o su tentativa.

El 8 de febrero de 2007, el recurrente salió incurso de ambas infracciones y fue sancionado con la pena de privación de privilegios de comisaría por cuatro semanas y la pérdida de bonificación por buena conducta. Lo anterior causó que el Comité se reuniera nuevamente el 13 de febrero de 2007.

Mediante resolución de 15 de febrero de 2007, el Comité determinó ratificarle la custodia máxima. Como fundamentos indicó: *"Por querellas de Nivel 1 demostrando pocos controles para estar en una custodia menor. Para observar por más tiempo ajuste en custodia. Deberá beneficiarse al máximo de tratamiento contra la adicción. Poco tiempo cumplido en relación a su sentencia."*

De la anterior ratificación, el recurrente presentó este recurso de revisión el 27 de febrero de 2007. En síntesis, planteó que la agencia no cumplió con su reglamentación al realizar la evaluación no rutinaria de custodia luego de que lo había reclasificado a custodia mediana y abusó de su discreción al clasificarlo en custodia máxima en vez de custodia mediana según la escala de clasificación aplicable. Por su parte, el Procurador General expuso que el Comité ejerció razonablemente su discreción, por lo que no debíamos intervenir con su determinación.

## II

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico y la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, según enmendada (Ley 116), 4 L.P.R. A. secs. 1101 y ss., establecen que será la política pública del Estado Libre Asociado que las instituciones penales propendan al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social, siguiendo el principio de tratamiento individualizado.

La Administración de Corrección es la entidad encargada de organizar los servicios de corrección de conformidad con el propósito rehabilitador del sistema correccional y de los objetivos del Gobierno del Estado Libre Asociado. A este fin, la Administración de Corrección tiene facultad para formular la reglamentación interna necesaria para los programas de diagnóstico, clasificación, tratamiento y rehabilitación del sistema correccional. Artículos 4 y 5 de la Ley 116, según enmendado, 4 L.P.R.A. secs. 1111 y 1112.

Conforme esta facultad delegada de reglamentación, para la clasificación de los confinados, la Administración de Corrección aprobó el Manual de Reglas para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Penales, Reglamento Núm. 2485 de 27 de febrero de 1979 (Manual de 1979). Además, promulgó el Manual de Clasificación de Confinados, Reglamento Núm. 6067 de 22 de enero de 2000 (Manual Núm. 6067).

El Manual de 1979 crea el Comité de Clasificación y Tratamiento en las Instituciones Penales (Comité de Clasificación) y define sus funciones. Su función básica es evaluar al confinado en términos de sus necesidades, capacidades, intereses, limitaciones y funcionamiento social; estructurarle un plan de tratamiento que se evalúa periódicamente para determinar si responde a las necesidades del confinado; y proceder con aquellos cambios necesarios para el logro de las metas rehabilitadoras y de protección social. Regla 2 del Manual de 1979.

Las Reglas 5 y 9.C.3. del Manual de 1979 establecen que las determinaciones del Comité de Clasificación deberán estar fundamentadas por hechos e información sometida a su consideración, y deberá demostrarse la necesidad de la acción que se aprueba o recomienda. La jurisdicción del Comité de Clasificación incluye los cambios de custodia y la acreditación, cancelación y restitución de bonificación. Reglas 6.B.2.a. y 8.4. del Manual de 1979.

Por su parte, la Regla 10 del Manual de 1979 establece que en toda evaluación de un caso en que se considere la asignación o clasificación de tipo de custodia, el Comité de Clasificación deberá tener presente los delitos cometidos, las circunstancias de éstos, la extensión de la sentencia dictada, el tiempo cumplido en confinamiento y aquellos factores que garanticen la seguridad institucional y pública. Además, esta Regla define los grados de custodia que tendrán las instituciones penales: máxima, mediana y mínima.

La custodia máxima se define en la Regla 10.A.1. del Manual de 1979 así:

*"Se entenderá por custodia máxima aquel grado de supervisión donde se aplican un máximo de controles externos y restricciones físicas por haberse determinado, luego de una evaluación analítica del caso, que el confinado tiene muy poco o ningún control sobre sus impulsos y que sus acciones, actitudes y conducta amenazan seriamente su propia seguridad, la seguridad institucional y la seguridad de las vidas y propiedades de la comunidad. Bajo este tipo de custodia, el confinado será alojado en celda individual y participará en aquellos programas de tratamiento que el Comité haya dispuesto y de otros servicios propios para su condición, bajo supervisión intensa."*

Por su parte, la custodia mediana se define en la Regla 10.B.1. del Manual de 1979 como:

*"[A]quel grado de supervisión donde se requiere un menor uso de controles externos para con el confinado por haberse determinado, luego de un estudio ponderado del caso, que éste cuenta con aquellos controles internos o los ha internalizado durante el confinamiento, que le permiten convivir con otros confinados; participar de los programas de tratamiento y de las actividades dentro del perímetro de seguridad institucional, sin necesidad de medidas de vigilancia extremas. Se considera que a pesar del confinado tener estos controles externos, no está preparado aún para realizar actividades en el exterior del penal."*

La Regla 10.A.2. del Manual de 1979 dispone que se considerará la conveniencia de asignarle custodia

máxima a un confinado cuando su historial social y delictivo, así como su conducta y funcionamiento social, refleje uno o más de, entre otros, los siguientes indicadores: agresividad; que se tenga información confiable sobre el confinado que pueda resultar en amenazas a la paz o tranquilidad del clima institucional o a la seguridad del propio confinado o de otros ciudadanos de la comunidad; y peligrosidad.

Además, la Regla 10.B.2. del Manual de 1979 establece que se considerará la conveniencia de asignarle custodia mediana a un confinado cuando su historial social y delictivo, así como su conducta y funcionamiento social, reflejen uno o más de los siguientes indicadores:

*"(a) Aquellos casos que puedan representar algún riesgo de fuga más allá del que representa toda persona recluida en institucional penal.*

*(b) Cuando el confinado ingrese por haber violado su libertad bajo palabra o su libertad a prueba, al resultar convicto por delitos menos grave o por no cumplir con las otras condiciones impuestas.*

*(c) Confinados que disfrutando de custodia mínima incurran en nuevos delitos.*

*(d) Todo confiando que permanezca en la institución en espera de que se le celebre juicio (sumariado), o vista ante el Tribunal o la Junta de Libertad Bajo Palabra por alegadas violaciones a las condiciones de probatoria o de libertad bajo palabra.*

*(e) Todo cliente sentenciado que tenga casos pendientes por resolver en un Tribunal.*

*(f) Cuando el confinado presente una tendencia a la desobediencia de las normas de la institución y/o no muestre interés en participar en los programas de tratamiento.*

*(g) Cuando observe una conducta hostil y de reto hacia la autoridad.*

*(h) Aquellos casos que estando clasificados previamente en custodia máxima, muestran cambios favorables en su comportamiento observable y se evidencia interés en beneficiarse de los servicios y programas a su disposición.*

*(i) Los confinados que estando ubicados en centros de tratamiento públicos o privados en la comunidad, o en los Hogares de Adaptación Social, son devueltos a la institución."*

Por otra parte, el Comité de Clasificación es el responsable de evaluar las necesidades de seguridad y de programas de los confinados sentenciados. Sección 1 del Manual Núm. 6067. Corresponde a los funcionarios de la Administración de Corrección realizar las labores que impactan la población interna. Éstos son los expertos en atender casos como el de autos, toda vez que conviven día a día con los confinados e intervienen con ellos de diferentes maneras.

Aunque los criterios y factores señalados para determinar el nivel de confinamiento de un recluso son, en muchas ocasiones, elementos de juicio subjetivos, el Comité de Clasificación, por tratar a diario con estos casos, es quien está en mejor posición para determinar si a un recluso en particular se le debe adjudicar una clasificación de custodia máxima, mediana o mínima. Como ha señalado el Tribunal Supremo, la clasificación del nivel de custodia de un confinado requiere que la agencia realice un adecuado balance de intereses, pues *"[p]or una parte, estará el interés público de lograr la rehabilitación del confinado, así como el de mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia." Cruz v. Adm. de Corrección,* 164 D.P.R.___ (2005), **2005 J.T. S. 39.**

En la Sección 1 del Manual Núm. 6067 se definen los diferentes grados de custodia a base del grado de supervisión. El nivel de custodia máxima se define como:

*"Confinados de la población general que requieren un grado alto de control y supervisión. A estos individuos se les puede restringir de determinadas asignaciones de trabajo y de celda, así como de determinadas áreas dentro de la institución, según se estime necesario por razones de seguridad. Se requerirán por lo menos dos oficiales correccionales como escolta para realizar viajes de rutina o de emergencia fuera de la institución. Se utilizarán esposas, cadenas y grilletes en todo momento cuando los confinados de custodia máxima se encuentren fuera del perímetro de seguridad (la verja o el muro). Estos confinados deben estar en celdas individuales, siempre que sea posible."*

Además, se define el nivel de custodia mediana como sigue:

*"Confinados de la población general que requieren un grado intermedio de supervisión. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser asignados a cualquier labor o actividad que requiera supervisión de rutina dentro del perímetro de seguridad de la institución. Se requieren dos oficiales correccionales como escolta para realizar viajes, ya sean de rutina o de emergencia, fuera de la institución, y se utilizarán esposas con cadenas en todo momento. A discreción de los oficiales de escolta, se podrán utilizar otros implementos de restricción."*

El Manual Núm. 6067, además, establece que la reclasificación de confinados es el procedimiento *"para la revisión del nivel actual de custodia de cada confinado con el fin de determinar cuán apropiada es la asignación actual de custodia."* Sección 7. Y el término reclasificación se describe como la *"[r]evisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su categoría de custodia."* Sección 1 del Manual Núm. 6067.

Por otro lado, en el Manual Núm. 6067 se dispone que la reevaluación de custodia es parecida a la evaluación inicial de custodia, pero recalca aún más la conducta institucional como reflejo del conocimiento real del confinado durante su reclusión. Y *"una reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada, sino que su función primordial es supervisar la adaptación del confinado y prestarle atención a cualquier situación pertinente que pueda surgir."* Además, es importante que los confinados con sentencias prolongadas tengan la oportunidad de obtener niveles de custodia reducida, condicionado a su cumplimiento con los requisitos de la institución. Sección 7 del Manual Núm. 6067.

La Parte III C. de la Sección 7 del Manual Núm. 6067 establece que, independientemente del status legal del confinado, el personal de clasificación cumplirá con varios requisitos al hacer una recomendación para reclasificación de custodia, incluyendo: (1) revisar el auto de prisión y los documentos de apoyo complementarios que obran en el expediente criminal del confinado; (2) revisar los formularios médicos y de salud mental; (3) revisar las puntuaciones de aptitud correspondientes a educación, adiestramiento vocacional y trabajo; (4) comunicarse con el Tribunal u otras fuentes para obtener, información adicional, aclaración de información, determinar el status de las órdenes de detención o de arresto antes de concluir las recomendaciones; (5) llevar a cabo una entrevista con el confinado para explicarle el proceso de reclasificación, verificar y estudiar los datos básicos relacionados con la clasificación, incluyendo el récord disciplinario en la institución e informarle al confinado de su nivel preliminar de reclasificación de custodia y de la próxima revisión rutinaria de reclasificación; (6) llenar el Formulario de Reclasificación de Custodia (Escala de Reclasificación de Custodia); (7) llenar el Formulario de Evaluación de Necesidades del Confinado (confinados sentenciados solamente); (8) documentar la revisión en el expediente social del confinado y entregarle al confinado copia del formulario para constatar que se le ha informado la decisión; (9) informar al personal de Salud Correccional correspondiente cuando se va a cambiar de clasificación del confinado que tenga una designación por su salud física o emocional.

En este caso, el cambio de clasificación realizado al recurrente el 15 de febrero de 2007 ocurrió como resultado de un proceso de naturaleza disciplinaria, el cual conlleva una evaluación del nivel de custodia de forma no rutinaria. Al salir incurso en una querella disciplinaria Tipo Nivel I o II de severidad, el Manual Núm. 6067 provee para una evaluación no rutinaria de custodia. Éste dispone que, entre otras situaciones, se realizará una evaluación no rutinaria de la custodia de un confinado cuando hay *"convicción del confinado por una violación disciplinaria de Nivel I/Nivel II según las define la AC"*. Sección 7 Parte III B.2.e. del Manual Núm. 6067.

Además, la Regla 15 B. del Reglamento Núm. 6994 dispone que en todos los casos de actos prohibidos Tipo Nivel I, el Oficial Examinador de Vistas Disciplinarias tendrá la obligación de referir su determinación al Comité de Clasificación de la institución para la evaluación de si procede un cambio en el nivel de custodia para el confinado incurso en dichos actos. De conformidad con estas disposiciones, en este caso, el Comité se reunió nuevamente porque el recurrente salió incurso en las querellas disciplinarias Tipo Nivel I de severidad, las cuales no estuvieron ante su consideración al momento de evaluarlo en octubre de 2006.

Finalmente, la *"Escala de Reclasificación de Custodia (Casos Sentenciados)"* (Escala de Reclasificación), Apéndice G-2 del Manual Núm. 6067, consiste de una escala de evaluación basada en criterios objetivos a los que se asigna una ponderación numérica fija. Este documento consiste de una planilla con varias partes, usada para actualizar y revisar la evaluación de custodia de un confinado (Planilla).

En la Parte II de la Planilla los factores considerados en los renglones del 1 al 3 son: gravedad de los cargos y condenas actuales, historial de delitos graves previos e historial de fuga de los últimos cinco años. Los renglones del 4 al 8 son: número de condenas disciplinarias; condena disciplinaria más grave; condenas previas de delitos graves como adulto por los últimos cinco años; participación en programas de tratamiento; y edad actual. Los renglones del 1 al 8 se suman. Si el total de los primeros tres factores es mayor de 7 o el total de los 8 renglones es 11 o más, el confinado deberá asignarse a custodia máxima. Si la suma total es de 6 a 10, o 5 o menos y concurren ciertas circunstancias, el confinado será acreedor de una custodia mediana. Si el total es 5 o menos sin las circunstancias indicadas le corresponde custodia mínima. Para el 15 de febrero de 2007, la suma total de estos renglones para el recurrente fue de 17, puntuación que lo hacía acreedor de una custodia máxima. Y contaba con una orden de deportación.

De otra parte, la facultad revisora de los tribunales de las decisiones emitidas por una agencia administrativa es limitada. La revisión judicial de las decisiones administrativas incluye las siguientes áreas: (1) concesión del remedio apropiado; (2) revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) revisión de las conclusiones de derecho en su totalidad. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 80-81 (1999); *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64, 129 (1998); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 2da. ed., Bogotá, Forum, 2001, pág. 534.

La función revisora del tribunal, aunque restringida, tiene como propósito fundamental delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. *Misión Ind. P.R. v. J.P.,* 146 D.P.R., a la pág. 129.

Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU). 3 L.P.R.A. sec. 2101 *et. seq. "Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".* Sección 4.5 de la LPAU, 3 L.P.R.A. sec. 2175. Sin embargo, *"[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal." Id.* Es, por tanto, indispensable que la agencia realice determinaciones de hechos y conclusiones de derecho que puedan proporcionar a los tribunales la base en la que descansó la decisión del organismo administrativo. De esta forma, los tribunales estarán en posición de descargar su función revisora responsablemente.

El criterio rector en la revisión judicial de una determinación de hechos de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como *"aquella [evidencia] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión"*. *Ramírez v. Depto. de Salud*, 147 D.P.R. 901, 905 (1999). De ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. *Pacheco v. Estancias*, 160 D.P.R. 409, 432 (2003). Dicho análisis requiere que la evidencia sea considerada en su totalidad; esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425, 437 (1997). Esta norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.

Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada ... y hasta el punto que se demuestre claramente que la decisión [de la agencia] ... no está justificada por una evaluación justa del peso de la prueba."* *Hilton Hotels v. Junta Salario Mínimo*, 74 D.P.R. 670, 686 (1953). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Véase, *Ramírez v. Depto. de Salud*, 147 D.P.R., a las pág. 905-906.

En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implante. Véase, *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 D.P.R. ___ (2004), **2004 J.T.S. 4**; *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R 269 (2000). Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. *Misión Ind. P.R. v. J.P.*, 146 D.P.R., a la pág. 132. Por tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. *Id.; T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R., a la pág. 80.

En aquellos asuntos que puedan ser catalogados como cuestiones mixtas de hechos y de derecho, la norma establecida es que la revisión judicial será análoga a la revisión de asuntos de derecho. Estos asuntos mixtos de hecho y de derecho surgen ordinariamente en ocasiones en las cuales existe confusión en cuanto a la aplicación del derecho a los hechos particulares del caso. Fernández Quiñones, *op. cit.*, pág. 561.

### III

Analizadas las controversias aquí planteadas a la luz de las normas de derecho indicadas resolvemos este recurso.

En primer lugar, la solicitud del recurrente en cuanto a la Resolución de 24 de octubre de 2006 es académica. El recurrente apeló de la misma y se declaró ha lugar su solicitud. Además, posteriormente el Comité se reunió de nuevo y emitió la Resolución de 15 de febrero de 2007 ratificando la custodia máxima. Por lo tanto, procede denegar la solicitud del recurrente en cuanto a la Resolución de 24 de octubre de 2006.

En cuanto a la Resolución de 15 de febrero de 2007, inicialmente debemos indicar que, de conformidad con el Manual Núm. 6067 y el Reglamento Núm. 6994, el Comité actuó correctamente aquí al reunirse nuevamente a la luz de las querellas disciplinarias Tipo Nivel I de severidad. El recurrente salió incurso de éstas, las cuales no estuvieron ante el Comité al momento de evaluarlo en octubre de 2006. Por lo tanto, procedía que el Comité realizara una evaluación no rutinaria de la custodia del recurrente. Sección 7 Parte III B.2.e. del Manual Núm. 6067; Regla 15 B. del Reglamento Núm. 6994.

Por otro lado, a la luz de lo establecido en el Manual Núm. 6067 y el Manual de 1979, la decisión sobre el

nivel de custodia del recurrente fue justificada y realizada conforme a sus disposiciones. Para el 15 de febrero de 2007, la suma total de los renglones de la Escala de Reclasificación para el recurrente fue de 17, puntuación que lo hacía acreedor de una custodia máxima. Aun cuando fuera correcto lo planteado por el recurrente de que había que restar dos puntos porque su convicción anterior era de un delito menos grave, el total sería de 15 que igualmente conlleva la clasificación de custodia máxima. Además, el recurrente contaba con una orden de deportación. Por ende, la evaluación de custodia no rutinaria del caso de autos lo hizo acreedor de un nivel de custodia de máxima.

Es importante además que en este caso el nivel de custodia no fue ratificado exclusivamente por el poco tiempo cumplido de la sentencia. Y el uso de discreción para ratificarle dicho nivel de custodia no estuvo basado únicamente en un sólo factor, ni en el término de la sentencia, sino en otros factores. La clasificación de un confinado es un asunto sobre el cual la agencia de corrección tiene gran discreción. *Cruz v. Adm. de Corrección, ante.*

Además, un confinado que comete actos de indisciplina relacionados con la posesión, fabricación o introducción de armas blancas y la agresión física seria o su tentativa indiscutiblemente no amerita estar en una custodia mediana, especialmente por la seguridad de la población penal. El recurrente es un confinado cuya conducta puede resultar amenazante a la tranquilidad del clima institucional y la seguridad del propio confinado y los otros miembros de la comunidad y denota un alto grado de agresividad y de peligrosidad. Véanse los indicadores de la Regla 10 A.2 del Manual de 1979.

De la totalidad del expediente del recurrente surge que el Comité no abusó de su discreción al determinar que se ratificara la custodia del recurrente en custodia máxima. Nada en su expediente coloca a este Tribunal en condiciones de negarle deferencia a esa determinación de la agencia. No hay indicio tampoco en el expediente de este caso de que la agencia haya ejercido su discreción de forma irrazonable, arbitraria o ilegal. Al aplicar las anteriormente indicadas normas de revisión judicial de una decisión administrativa al caso de autos, nos llevan a concluir que la resolución de la Administración de Corrección fue una razonable y no requiere la intervención de este Tribunal. La misma estuvo sostenida por la evidencia sustancial del expediente del recurrente. *Cruz v. Adm. de Corrección, ante.* Por lo tanto, procede confirmar la determinación recurrida.

**IV**

Conforme lo anteriormente expuesto, se dicta sentencia denegando el recurso presentado por el recurrente.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones